**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2098-22

HEATHER L. FUREY,
THOMAS FUREY, and
VOORHEES LAW
CENTER, LLC,

      Plaintiffs-Appellants,

v.

VOORHEES TOWNSHIP
ZONING BOARD OF
ADJUSTMENT and
VOORHEES ROUTE 73
DEVELOPMENT GROUP,
LLC,

      Defendants-Respondents.

_____

      Argued March 13, 2024 – Decided March 27, 2024

      Before Judges Firko and Susswein.

      On appeal from the Superior Court of New Jersey, Law
      Division, Camden County, Docket No. L-0519-22.

      Howard N. Sobel argued the cause for appellants.

Christopher J. Norman argued the cause for respondent Voorhees Township Zoning Board of Adjustment (The Platt Law Group, PC, attorneys; Christopher J. Norman, on the brief).

Timothy M. Prime argued the cause for respondent Voorhees Route 73 Development Group, LLC (Prime & Tuvel, LLC, d/b/a Prime Law, attorneys; Timothy M. Prime, on the brief).

PER CURIAM

Plaintiffs Heather L. Furey, Thomas Furey, interested homeowners, and Voorhees Law Center, LLC (the Law Center), an affected party, appeal from a February 1, 2023 Law Division order dismissing their complaint in lieu of prerogative writs and affirming defendant Voorhees Route 73 Development Group's (applicant)[1] application for a use variance and preliminary and final site plan approval for a Wawa with a fueling station. We affirm.

I.

The following facts are relevant to our review. On December 19, 2019, applicant requested preliminary and final major site plan approval with bulk variance and design waivers to permit construction of a 5,501 square foot Super Wawa 24/7 convenience store with eight fuel dispensers and a 7,150 square foot

---

[1] We refer to defendant Voorhees Route 73 Development Group as "applicant" in our opinion and to defendant Voorhees Township Zoning Board of Adjustment and applicant collectively as "defendants."

covered canopy on Route 73 at the corner of Kresson Road (County Road 671). The site consists of lots 9 and 16. The vast majority of the proposed site is located on lot 9 in the Voorhees Major Business (MB) zoning district, except for a proposed secondary access drive on Kresson Road. Voorhees, N.J., Township Code § 152.102 (2023), permits retail and commercial businesses, including convenience stores with gasoline functions. Therefore, lot 9 does not require a variance. However, a small portion of lot 16, consisting of approximately one-third of an acre, is located in a rural residential (RR) zone, which only permits single-family dwellings. The subject property consists of 3.48 acres in Voorhees Township and .048 acres in Evesham Township.[2]

Primary access to the Wawa is from Route 73. Included in the application, and pertinent to this appeal, is a proposed secondary ingress and egress driveway to be situated on lot 16 with access to Kresson Road that would occupy the residential zone portion of lot 16, therefore requiring a use variance. The area is wooded, and a one-story dwelling on Kresson Road would be demolished to construct the secondary driveway entrance. The proposed driveway is bordered

---

[2] The application was approved in Evesham Township and is not challenged on appeal.

by two non-residential uses, the Law Center and a church. The Furey plaintiffs reside at 508 Kresson Road, across from the proposed development.

Applicant sought use variance approval under Voorhees, N.J., Township Code § 152.002 (2023), to permit construction of the secondary driveway on Kresson Road, which is not a permitted use in the RR zone. Applicant also requested bulk variances for signage, and waivers for drive aisles and landscaping, which are not challenged on appeal.

On March 12, 2020, as required by N.J.S.A. 40:44D, defendant Voorhees Township Zoning Board of Adjustment (the Board) provided notice to residents of the March 26, 2020 hearing. The hearing was delayed due to the COVID-19 pandemic. On April 22, 2021, a second notice was sent to residents advising them of the new hearing date, May 6, 2021, which would be conducted via Zoom. In addition, on April 22, 2021, a notice was published in the local newspaper, The Courier Post.[3]

<u>The May 6, 2021 Hearing</u>

---

[3] We note the Voorhees Township website incorrectly listed April 8, 2021, as the hearing date. However, since posting to a Township's website is not statutorily or regulatorily mandated, and all the legally required elements were satisfied by mailing and publishing in the local newspaper, any error on the website is insufficient to deem the notice defective. See N.J.S.A. 40:55D-11 and -12.

On May 6, 2021, the Board held the first of three non-consecutive days of remote public hearings via Zoom. At the first hearing, applicant presented testimony from two expert witnesses. The first expert, Matthew Sharo,[4] a professional site and use engineering planner, testified about the zoning layout of the property, the benefit of a right-turn only egress to Kresson Road to lessen traffic at the Kresson Road and Route 73 intersection, and a proposal to reduce the speed limit along Kresson Road from forty-five miles per hour to thirty-five miles per hour for safety reasons, which he indicated the Camden County Engineering Department would favorably consider. Sharo indicated the proposed driveway on Kresson Road would be twenty-five feet wide.

Sharo testified about proposed parking spaces, installation of three sidewalks, and a 100-foot buffer at the rear of the Wawa building leaving some natural buffer intact. He also testified about anticipated operations for the Wawa, such as deliveries of groceries and other items. Sharo indicated fuel would be delivered during off-peak hours. He stated ample landscaping was proposed that would satisfy the Voorhees Township Compensating Tree Ordinance, and the proposed stormwater management would comply with local and state regulations.

---

[4] Also referred to as "Shero" in the record.

A-2098-22

Applicant's second witness, Nick Verderese, an expert in traffic and transportation engineering, testified about traffic studies and the methodologies supporting the studies in connection with the application. Verderese testified that three quarters of the traffic attracted to Wawa—roughly seventy-six percent—would be individuals already traveling on the adjacent roadway, which means the Wawa would not significantly increase traffic.[5] Verderese testified that the Route 73 shoulder lane would be widened and the proposed Kresson Road secondary driveway would be shifted 600 feet back from the Kresson-Gibbsboro Road intersection. Verderese opined that he anticipated "little to no impact to the area." He recommended the speed limit be reduced from forty-five to thirty-five miles per hour.

Verderese also addressed two important traffic concerns: (1) the traffic would not be a new problem as the majority of individuals stopping at the Wawa were already using the roads; and (2) additional traffic would not be drawn to Voorhees because there are other Wawas located four miles to the south and six miles to the north that individuals from those areas could stop at. Verderese

_____

[5] These individuals are frequently referred to as "pass-by" traffic. Here, the individuals are already driving on Route 73 and would stop at Wawa because it is on route. Based on applicant's studies, only about twenty-four percent of the individuals would be considered new traffic because they drove on the road specifically to go to Wawa, not simply to pass by.

6

also testified that the traffic study anticipated one customer per minute.  He explained that the application sought to restrict the left turn egress on Kresson Road by providing an island.  Verderese also testified that the applicant would widen Kresson Road to provide a five-foot wide lane in the eastbound direction with a five-foot wide bike lane adjacent to it.

At the conclusion of the experts' testimony, the Board considered testimony from residents who lived on Kresson Road and nearby Birch Street. The members of the public who spoke were predominantly concerned with traffic generated by the proposed secondary access driveway, safety for children and bicyclists in the area, trash, and debris.

In response, applicant's counsel explained that a second driveway was needed for safety purposes because if the first driveway on Route 73 was blocked, individuals at the Wawa would be blocked in.  Verderese clarified the need for the driveway on Kresson Road was to avoid residents on Kresson Road and the area west of the site from having to enter the intersection, make a left-hand turn onto northbound Route 73, then circling back to get into the "right in/right out" driveway on the divided highway on Route 73 South, and enter the Wawa.

A-2098-22

Later in the meeting, plaintiffs' counsel indicated he wanted an opportunity to cross-examine defendants' expert witnesses and raised issues about notice and a lack of available records. The Board's chairman and defendants' attorney assured plaintiffs' counsel that he would be able to conduct cross-examination at the next hearing on July 8, 2021, and present his expert witnesses, and would be sent a full set of plans, all of the reports, and anything else counsel needed to prepare for cross-examination. The plans were provided more than ten days in advance of the second hearing.

### The July 8, 2021 Hearing

At the second hearing, applicant's counsel addressed proposed amendments to its application for a revised driveway plan, which included a widening and slight relocation of the driveway to distance it from the Law Center, and to provide room for a full sidewalk along the front of the property for pedestrian safety. Since Verderese was unable to attend the second hearing, another colleague from his firm, Justin Taylor, an expert in traffic and transportation engineering, who was familiar with the matter, testified in his place.

Taylor stated that his office had a meeting with Camden County representatives regarding the application, and the County confirmed that the

additional driveway on Kresson Road would be beneficial because it would alleviate traffic issues along Route 73 and minimize the impact at the Kresson-Gibbsboro Road, Kresson Road and Route 73 intersection.  Taylor opined that the Department of Transportation (DOT) would recommend this plan as it would "prefer to see some access on the secondary roads to improve the efficiency of the state highway system and the intersections along there."  Taylor stated the Wawa would not increase traffic in the area.

Applicant then offered testimony from Paul Phillips, an expert in the field of planning and zoning land use.  Phillips opined that, although lot 9 comported with the required zoning, lot 16 would require a D-l use variance, and testified "the secondary access is critical to the convenience store fuel sales operation as it's all about being readily accessible to the public."

Phillips also testified that the driveway would promote or advance three purposes of N.J.S.A. 40:55D-2(a): (1) guide development in a manner that promotes the public welfare; (2) provide sufficient space in appropriate locations for a variety of uses; and (3) promote the free flow of traffic to reduce congestion. Regarding the "negative criteria" of N.J.S.A. 40:55D-70(d), Phillips further opined that the impact on the neighborhood would be minimal, as the properties adjacent to the proposed secondary access driveway were

9

nonresidential—the Law Center on one side and a church on the other—and would not compromise the integrity of the RR zone.[6]

Following the testimony of applicant's experts, the Board again heard from members of the public. Eleven members of the public spoke, including three members who testified at the first meeting about the safety and overall impact on the neighborhood, including children who attend Kresson Elementary School and who play baseball at Rabinowitz Field, as well as bicyclists using the designated bike paths on Kresson Road. In response to questions raised by members of the public, Taylor confirmed that the proposed driveway would not change the volume of traffic on Kresson Road and traffic entering or exiting Birch Street.

Plaintiffs' counsel objected to Verderese's absence at the second hearing, stating it denied counsel the opportunity to conduct cross-examination. For efficiency, the Board allowed plaintiffs' counsel to have his witnesses testify at

---

[6] It was Phillips's opinion that the area around the Wawa was "transitional in nature" and a clear residential land use pattern or presence did not come into play until Birch Street. Phillips opined that he did not think this particular section of Kresson Road would maintain long-term viability for single-family residential use; therefore, allowing a driveway in that location would not rise to the level of creating a substantial impact on the zoning plan.

the hearing since they were available and let him cross-examine applicant's witnesses at the next hearing date.

Plaintiffs presented testimony from Steve Chepurny, a landscape architect, and Barbara Woolley, a professional planner. Chepurny opined that the proposed driveway would have a dramatic impact on the Law Center's property. Chepurny testified that the proposed sidewalk improvements along the right-of-way would require the removal of a large tree, disrupt the buffering and landscaping, and increase sunlight, to the detriment of the Law Center and its koi pond, and potentially the building's foundation. Chepurny opined the removal of landscaping from the right-of-way would make the 100-year-old Law Center building appear to be too close to Kresson Road. Although the Board generally gave each witness ten minutes to testify, Chepurny testified for fifteen minutes.

Woolley was qualified as an expert in planning and development. She testified that the proposed variance violated the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -65, and its goal of promoting "aesthetics and the preservation of the neighborhood character." Woolley stated the application does not satisfy the purpose of zoning or positive criteria. Woolley testified that the area to the rear of the site is primarily residential, and the proposed

development is too intense for this site because it "is introducing a major commercial development into that more lower intensity area." Woolley stated that no zoning goals would be advanced by the application, and the applicant failed to meet its burden for a use variance. She testified that removing the dwelling and constructing a commercial driveway in its place will "blur" the zoning boundaries of the zoning district.

At the conclusion of plaintiffs' experts' testimony, the Board heard testimony from Stacey Arcari,[7] the Board's traffic engineer. Arcari testified that she agreed with applicant's experts' testimony that most of the traffic for the property would be pass-by traffic and that the second commercial driveway would alleviate tension from—and take the burden off—Route 73, Kresson Road, and Kresson-Gibbsboro Road. Arcari confirmed that the DOT could not require a driveway on County Road 671, but was highly recommending it.

<u>The December 16, 2021 Hearing</u>

On December 16, 2021, the third hearing date, Verderese was recalled to testify about applicant's recently updated plan, known as "Concept B," dated November 8, 2021. The third hearing primarily focused on the physical impact of the secondary driveway on the Law Center's property. Verderese indicated

---

[7] Also referred to as "Arceri" in the record.

that after taking into account the public's comments from the prior hearing, the road widening would now be shifted to the opposite side of Kresson Road to increase the buffer for the Law Center and other similarly affected properties.

In addition, Verderese noted that the sidewalk would be relocated to be situated entirely within the right-of-way, and extended to fill gaps to improve pedestrian safety. He also noted that if applicant only built the Wawa store and did not add a driveway, then children in the area would be walking on the street for 2,000 feet instead, creating a safety issue.

Ultimately, Verderese opined that it would be a "positive" for the Board to grant the variance because it was a better alternative than having the driveway on the east side or within the commercial zone since it would be closer to the signal. Plaintiffs' counsel was then allotted time to cross-examine applicant's three expert witnesses.

After the hearing was opened for public comments, plaintiffs' counsel elicited testimony from Gordon Meth, a traffic engineering expert. Meth testified about sight distancing and opined that the site distance to the secondary access on Kresson Road is 200 feet, when it should be 430 feet.

Plaintiffs' counsel then recalled Chepurny, who reiterated his prior testimony that the proposed driveway would have a substantial adverse impact

A-2098-22

on the Law Center. At the completion of Chepurny's rebuttal testimony, the Board again opened the meeting for public comment. Heather Furey and three members of the public commented and again expressed traffic concerns. The Board then closed the evidentiary portion of the hearing. The Board proceeded to vote on the application, with five members voting yes and two members voting no.

On January 13, 2021, the Board adopted a twenty-five-page resolution granting defendant's application for a use variance to allow for the secondary access drive on Kresson Road. The Board reasoned the property is "primarily in the MB" zone and would be a permitted use "but for the secondary access drive on Kresson Road in the RR" zone. The Board found applicant's traffic engineer's testimony "credible" regarding the "traffic design with the secondary access on Kresson Road with restriction on left-turn egress represent[ing] a better planning alternative than a plan strictly limiting ingress/egress on Route 73." The Board found limiting ingress/egress only to Route 73 will "likely create congestion issues at the Route 73/Kresson Road traffic-light intersection" and that the Board's engineer has "endorsed" the traffic design.

The Board also found applicant's professional planner was "credible" regarding the proofs for a use variance and a bulk variance. The Board found

14

"special reasons exist," "the purposes of zoning are advanced," the secondary driveway on Kresson Road is "particularly suitable," and "the granting of relief will not substantially impair the neighborhood."

The Board also concluded the "negative criteria" was met by the applicant based upon the testimony of its three expert witnesses. In particular, the Board noted a Wawa convenience store and fueling station is a permitted use on the subject property on Route 73, and applicant "will mitigate any substantial adverse impacts on adjoining non-residential properties within the RR zone." The Board found the proposed use is "compatible" with the MB zone and the RR zone "with adequate buffering and screening."

The Board considered the concerns raised by plaintiffs and neighbors regarding traffic patronizing Wawa's as "primarily 'pass-by trips' that are already on the roadway heading to other destinations" as confirmed by applicant's traffic engineers and the Board's engineer. The Board specifically rejected the argument that the secondary access driveway would create new traffic problems on Kresson Road "as it is anticipated that motorists will comply with posted speed limits and traffic laws." Lastly, the Board found "the expert planning testimony in support of granting variance relief was more credible on the part of Wawa," and plaintiffs' planner's expert testimony that a Wawa convenience

store/fueling station was inappropriate on Route 73/Kresson Road within the MB zone "simply is not credible."

On February 28, 2022, plaintiffs filed a four-count complaint in lieu of prerogative writs in the Law Division, challenging the Board's decision on the following grounds: lack of jurisdiction (count one); lack of procedural due process (count two); arbitrary, capricious, and unreasonable conduct (count three); and violation of the MLUL and Voorhees Ordinance § 156.008(D), claiming two Board members, Alina Tulman and Balrup Hundal, were not present for all hearings and did not provide certifications to the Board that they read a transcript or listened to recordings of the hearings they missed (count four). The trial court conducted several case management conferences established a briefing schedule for discovery, and conducted oral argument on December 5, 2022. The trial court reserved decision.

On February 1, 2023, the trial court entered an order denying the relief sought by plaintiffs and issued a comprehensive fifty-page written decision. The trial court found applicant's three expert witnesses—Sharo, Verderese, and Phillips—were all "credible." The trial court determined plaintiffs' expert, Chepurny, was "less credible" than applicant's expert witnesses because he offered "irrelevant or unreasonable testimony and did not evidence the breadth

of knowledge of the area as did the other witnesses." In addition, the trial court noted Chepurny's testimony "seemed confusing at times."

Regarding Woolley's testimony, the trial court found her testimony was "credible," but "irrelevant," and "based only upon personal experience." The trial court explained that Woolley's answers were "concise" but "inherently unbelievable" because she stated, without authority, that "too much variance relief is being requested;" testified about vehicle traffic "despite admitting she is not a traffic expert;" and "misunderstood section B of the MLUL as it pertains to flood, fire, panic, natural, and manmade disasters." The trial court also pointed out Woolley's testimony that the variance should not be granted because the master plans dating back to 1998 failed to mention changes to the permitted uses of the area "appears to misunderstand the nature of use variance relief."

The trial court concluded the Board was not arbitrary, capricious, or unreasonable when it approved applicant's variance. For the positive criteria, the trial court found "the Board ha[d] ample basis to designate lot 16 as particularly suitable for the requested use variance." The trial court reasoned the proposed driveway was already situated between two non-conforming properties, and the Board reasonably relied on expert testimony on this issue. For the negative criteria, the trial court found the Board's decision was entitled to deference,

17

reasoning, "[t]he driveway w[ould] not be substantially detrimental to public good, nor w[ould] it, as already mentioned, substantially impair the intent and purpose of the zone plan and zoning ordinance." This appeal followed.

On appeal, plaintiffs raise the following arguments for our consideration: (1) the trial court usurped its role and made findings of fact that were contradicted by the record; (2) plaintiffs were denied due process, and their counsel received disparate treatment; and (3) the applicant failed to satisfy the positive and negative criteria and ultimately sought rezoning by variance.

## II.

## A.

We first address plaintiffs' argument that the trial court usurped its role and made findings of fact that were contradicted by the record. "When reviewing a trial [court's] decision regarding the validity of a local [B]oard's determination, 'we are bound by the same standards as was the trial [judge].'" Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). However, when an appeal raises a question of law, we apply a plenary standard of review. Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993).

We "give deference to the actions and factual findings of local [B]oards and may not disturb such findings unless they [are] arbitrary, capricious, or unreasonable." Jacoby, 442 N.J. Super. at 462. Local zoning boards have "peculiar knowledge of local conditions" and must be afforded "wide latitude in the exercise of delegated discretion." Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965).

However, we give less deference to a Board's grant of a variance than a denial because "[v]ariances to allow new nonconforming uses should be granted sparingly and with great caution since they tend to impair sound zoning." Burbridge v. Governing Body of Twp. of Mine Hill, 117 N.J. 376, 385 (1990) (alteration in original) (quoting Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 275 (1967)).

The MLUL vests a zoning board with the power "[i]n particular cases for special reasons, [to] grant a variance to allow departure from regulations . . . to permit . . . a use or principal structure in a district restricted against such use or principal structure." N.J.S.A. 40:55D-70(d)(1). The burden on the applicant to show "special reasons" is often referred to as the positive statutory criteria. See Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323 (1998).

"No variance . . . may be granted . . . without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance."  N.J.S.A. 40:55D-70.  "This is sometimes referred to as one of the 'negative' statutory criteria for the grant of a use variance."  Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006) (quoting Smart SMR, 152 N.J. at 323).

Plaintiffs contend that the trial court made independent credibility findings even though the Board made none.  Defendants counter the trial court did not usurp its role in reviewing the record and did not make independent findings of fact that were not supported by the record.

A Board's resolution "must contain sufficient findings, based on the facts in the record, to satisfy a reviewing court that the Board has analyzed the applicant's variance request in accordance with the statute and in light of the municipality's master plan and zoning ordinances."  N.Y. SMSA v. Bd. of Adj., 370 N.J. Super. 319, 333 (App. Div. 2004). We have rejected memorializing resolutions that "summarize[d], in a very cursory fashion, the testimony presented by [the applicant's] witnesses, and reiterate[d] selected comments by Board members and the public."  Ibid.; see also Cox & Koenig, N.J. Zoning &

Land Use Administration § 19:7-2 (2024) (stating "mere recitals of testimony are not 'findings.'").

Although a zoning board may reject an applicant's expert testimony, it must do so on an identified basis, such as reliance on contrary expert testimony, and should not rely on "bare allegations or unsubstantiated beliefs." N.Y. SMSA, 370 N.J. Super. at 338 (citing Cell S. of N.J. v. Zoning Bd. of Adjustment, 172 N.J. 75, 87 (2002)). A resolution relying on comments and concerns from Board members or residents will not satisfy a Board's obligation to ground its decision on evidence presented during a hearing. Cell S. of N.J., Inc., 172 N.J. at 88 (holding a Board's decision must be "root[ed] . . . in substantiated proofs rather than unsupported allegations."). A Board's reliance upon non-expert testimony from its members or concerns voiced by residents rather than qualified expert testimony to prove the adverse effects associated with a requested variance renders a Board's decision arbitrary, capricious, and unreasonable. Ibid.

The record belies plaintiffs' assertions. For example, the record shows that plaintiffs' contention the Board made no credibility findings is simply untrue. In paragraph thirty-two of the Board's resolution, it found "credible the expert traffic testimony proffered by [a]pplicant's traffic engineer . . . ." In

paragraph thirty-three of the Board's resolution, it found "credible the testimony of [a]pplicant's professional planner . . . ."  In paragraph thirty-nine of the Board's resolution, it found "the expert planning testimony in support of granting variance relief was more credible on the part of [applicant]."  Also in paragraph thirty-nine, the Board found plaintiffs' expert testimony "not credible."

Based upon our review of the record, we are satisfied the Board properly relied on substantial credible evidence in the record and made findings of fact and conclusions of law that went beyond a mere recital of the testimony. Therefore, we conclude that the Board upheld its statutory responsibility to make independent findings of fact. Grasso v. Borough of Spring Lake Heights, 375 N.J. Super. 41 (App. Div. 2004) (citing Scully-Bozarth Post #1817 of Veterans of Foreign Wars of U.S. v. Planning Bd. of City of Burlington, 362 N.J. Super. 296 (App. Div. 2003)).

Nor did the trial court usurp the Board's role, as plaintiffs argue. Rather, the trial court performed its role to carefully review the transcripts and the Board's findings of fact and confirmed those findings to support its decision that the Board was not arbitrary, capricious, or unreasonable.  For instance, the trial court confirmed the Board's finding that applicant's planning expert was more credible than plaintiffs' planning expert noting, "Mr. Phillips was a credible

witness, whose testimony was clear and concise, and who evidenced knowledge not only about the application, but also about the area, state and local laws, and the applicant's intent." In contrast, the trial court found Woolley's testimony "both irrelevant and based only upon her personal experiences," and her answers were sometimes "inherently unbelievable."

The Board's findings and conclusions are rooted in competent evidence. The Board considered and rejected evidence produced by plaintiffs and did not agree with their position. The record on which the Board's decision was made was both complete and thorough. The trial court confirmed the Board's decision, which was supported by findings of fact that were not arbitrary, capricious, or unreasonable.

B.

Next, plaintiffs argue the trial court erred in finding there was no denial of due process or disparate treatment that negatively impacted them. Specifically, plaintiffs contend that the Board excluded their counsel from engaging in voir dire of the experts, objecting during the direct examination of experts, and engaging in contemporaneous cross-examination. Defendants counter that plaintiffs' counsel received a fair and meaningful opportunity to participate at the hearings.

23

It is well established that planning boards act in a quasi-judicial fashion. Kramer, 45 N.J. at 282; see also Paruszewski v. Twp. of Elsinboro, 154 N.J. 45, 54 (1998). Proceedings before boards are usually somewhat informal, nevertheless, some orderly manner of hearing the evidence and testimony should be observed. Cox & Koenig, § 18-3.1. "All interested parties in attendance who wish to speak in favor of the application should be heard," and "all interested persons who wish to speak out against the application should be heard." Id. § 18-3.2. N.J.S.A. 40:55D–10(d) further establishes certain minimal procedures by stating:

> The testimony of all witnesses relating to an application for development shall be taken under oath or affirmation by the presiding officer, and the right of cross-examination shall be permitted to all interested parties through their attorneys, if represented, or directly, if not represented, subject to the discretion of the presiding officer and to reasonable limitations as to time and number of witnesses.

While most objectors are entitled to be heard, the chairperson may reasonably limit duplicitous or irrelevant testimony. Shim v. Washington Twp. Plan. Bd., 298 N.J. Super. 395, 413-14 (App. Div. 1997). Also, where objectors had an opportunity to cross-examine witnesses on most days of a hearing, the fact that a particular witness was not available on one day did not deprive the objectors of their right to cross-examine and did not invalidate the Board

24

decision. See Lincoln Heights Ass'n v. Cranford Plan. Bd., 314 N.J. Super. 366 (Law Div. 1998). Accordingly, a Board's decision should not be overturned if substantial justice was in fact achieved notwithstanding the Board's errors. DeMaria v. JEB Brook, LLC, 372 N.J. Super. 138, 146 (Law Div. 2003).

Here, the record shows the Board conducted all three hearings in a manner that did not deny plaintiffs, or any member of the public, the right to fully and meaningfully participate. After an exhaustive review of the record, the trial court correctly noted, "[t]he Board's refusal to hear the argument when [plaintiffs' counsel] sought to present it was neither an error warranting reversal, nor an error warranting remand. It was, simply, a determination by the [B]oard as to when the argument would be heard, at a time they chose, and not at a time when counsel chose." See Mercurio v. DelVecchio, 285 N.J. Super. 328, 335 (App. Div. 1995). The record supports that determination. Moreover, plaintiffs' counsel was permitted to raise his arguments at each hearing.

Plaintiffs' counsel also takes issue with the time restrictions imposed on him to question witnesses, but, again, the record demonstrates, he was not denied due process. In fact, even when reasonable time limitations were placed on plaintiffs' counsel for questioning witnesses—a ten-minute limitation—which is something the Board has a right to do pursuant to N.J.S.A. 40:55D-10(d), the

Board consistently allowed him to exceed his allotted time even though he agreed to abide by the ten-minute limitation. For example, during his cross-examination of Verderese, plaintiffs' counsel was afforded fifteen minutes over the eight minutes he claimed he needed. Woolley testified on direct examination for fourteen minutes. As the trial court correctly noted, "by necessity, reasonable limitations do not necessarily equate to equal time allotments for all witnesses."

Similarly, the interruptions and objections interjected against plaintiffs' counsel by the chairperson and applicant's counsel were not unfair nor a denial of due process. It is well established that the chairperson is allowed to reasonably limit duplicitous or irrelevant information. During the third hearing, the Board appropriately interrupted plaintiffs' counsel to ensure his experts were testifying about issues about which they were qualified and to stay focused on the application. We reject plaintiffs' assertion that their landscaping architect was "shackled with unreasonable restrictions"; he was merely barred from testifying about surveying, which he was not qualified to testify about in an expert capacity.

Moreover, plaintiffs' claim that they were prejudiced because the applicant confused the Board and the public by its experts' testimony opining

26

that the second driveway entrance was required by the DOT is also devoid of merit. The record clearly demonstrates that any confusion was clarified when applicant's counsel represented that the DOT encouraged and supported the second driveway, but could not require it because the DOT does not have jurisdiction over a county road.

Even plaintiffs' own expert witness, Woolley, understood that to be the case when she noted, "they've clearly stated for the record that it is . . . encouraged, not required and not mandated." Thus, the trial court correctly found that the record showed the Board properly conducted the hearings without any infringement of plaintiffs' due process rights and without prejudice to any members of the public.

C.

Plaintiffs next contend that the trial court erred in finding the applicant presented sufficient proofs at the hearings to satisfy the criteria to be granted a use variance. The MLUL governs land use and development planning generally and specifically authorizes zoning boards to grant variances under circumstances defined in the statute. The statute requires a finding of "special reasons" or positive criteria, and "a showing that such variance or other relief can be granted without substantial detriment to the public good and will not

substantially impair the intent and the purpose of the zone plan and zoning ordinance" or negative criteria. N.J.S.A. 40:55D-70(d).

To satisfy the "special reasons" or positive criteria as a predicate to granting a use variance under (d)(1), an applicant must prove: (1) the use "inherently serves the public good"; (2) "the use promotes the general welfare because the proposed site is particularly suitable for the proposed use"; or (3) the applicant would experience "undue hardship," because "the property cannot reasonably be developed with a conforming use." Medici v. BPR Co., 107 N.J. 1, 4 (1987); see also Stop & Shop Supermarket Co. v. Bd. of Adj. of Springfield, 162 N.J. 418, 430-31 (2000). The Board's function is to analyze whether these special reasons exist and in actions in lieu of prerogative writs, the judge considers whether the Board's action was arbitrary, capricious, or unreasonable, and whether it acted properly in accordance with the statutory standard. Paruszewski, 154 N.J. at 54-55.

Plaintiffs assert that applicant failed to satisfy the positive criteria requirement because it did not present sufficient special reasons. According to plaintiffs, the application here serves no purpose other than profit for Wawa and increased customer flow.

A-2098-22

In Price v. Himeji, LLC, 214 N.J. 263, 284 (2013), our Court considered the meaning of "particularly suited."  The Price Court held demonstrating that a proposed site is particularly suited for the proposed use "does not require proof that there is no other potential location for the use, nor does it demand that the project 'must' be built in a particular location."  Id. at 293.

> Rather, it is an inquiry into whether the property is particularly suited for the proposed purpose, in the sense that it is especially well-suited for the use, in spite of the fact that the use is not permitted in the zone. Most often, whether a proposal meets that test will depend on the adequacy of the record compiled before the zoning board and the sufficiency of the board's explanation of the reasons on which its decision to grant or deny the application for a use variance is based.
>
> [Ibid.]

In finding the applicant demonstrated "special reasons" for the (d)(1) variance here, the trial court analyzed whether the positive criteria were satisfied.  The trial court reasoned the Board had "ample basis to designate [l]ot 16 as particularly suitable for the requested use variance" because the proposed driveway is "uniquely situated in the RR Zone, as it is bordered on both sides by properties with non-conforming uses."  The trial court highlighted that the proposed driveway "abuts the MB Zone where the use would be conforming and provides the Wawa with frontages on two major thoroughfares."

29

The trial court concluded the Board relied on expert testimony in finding the enumerated (d)(1) factors were met, and that the resolution cited "specific, independent facts" from the hearings evidencing the proposed driveway: "(1) promotes the public health, safety, morals, and general welfare; (2) provides sufficient space for a commercial location; and (3) promotes the free flow of traffic to reduce vehicle congestion."

Having reviewed the record, we are satisfied the positive criteria were met. Citing Price, the trial court here correctly pointed out a variance was granted because the parcel was situated across the street from a zone where the use was permitted, and in the residential area of the subject property, only thirty percent of the structures complied with the existing height requirement. 214 N.J. 272, 274-75.

Like Price, applicant's secondary driveway also sits directly next to a lot where its use would be conforming. And, it is also uniquely situated in a residential zone that is surrounded by properties with non-conforming uses— the Law Center and a church. The trial court was correct in its determination that the positive criteria were met.

As to the first factor of the negative criteria, the trial court found that the secondary driveway would not "damage the character of the neighborhood" or

30                                                                        A-2098-22

"exacerbate existing problems."  The trial court highlighted that "76% of anticipated customers were already driving by the proposed Wawa and would return to either Route 73 or Kresson Road upon exiting."  The trial court also considered that the "remaining 24% of anticipated customers have the potential to exacerbate traffic," however, plaintiffs "failed to quantify the share of those drivers expected to come from Route 73, where no use variance is required, vis-à-vis Kresson Road, the actual site of the requested variance and where exacerbation is relevant."

The trial court also examined the experts' testimony pertaining to site distances—which look to whether vehicles have sufficient time to exit safely—and determined the Board's finding that the negative criteria were met was supported by the record.  We agree.

The trial court next considered the second prong and concluded applicant proved the grant of the use variance "would not substantially impair the intent and purpose of the zone plan and zoning ordinance."  The trial court noted there "had been a substantial change in the character of the neighborhood surrounding the subject property" and along the north side of Kresson Road between Route 73 and Birch Street, "there is only one single residence located in the RR zone." In rejecting plaintiffs' argument that the Wawa would compromise the integrity

31

of the RR zone, the trial court concluded that based on Taylor's credible testimony, Kresson Road will "operate at levels of Service B . . . which shows that there is capacity to accommodate the additional traffic." Based on the record, we are satisfied the applicant satisfied the second prong of the negative criteria.

There is sufficient evidence supporting the Board's finding that the use variance will not cause substantial detriment to the public good. Transformation of the vacant space, with the exception of the dwelling to be demolished, will provide an amenity to the area. With little impact on traffic, there is no credible evidence that the application will cause a substantial detriment to the public good. Medici, 107 N.J. at 22, n.12.

On this record, there is substantial credible evidence supporting the Board's decision to grant the use variance. Consistent with the Board's "peculiar knowledge of local conditions, [it] must be allowed wide latitude in [its] delegated discretion." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005). The Board thoroughly reviewed the testimony and evidence and detailed its findings in its resolution.

When weighing the benefits and detriments of granting the variance, the Board found benefits to the community and noted that any detriments were

insignificant. And in its review, the trial court was satisfied the Board's decision was grounded upon facts found in the record and those facts support the conclusions it reached in granting the variance and application. The Board's approval is therefore supported by sufficient, credible evidence in the record, and is not arbitrary, capricious, or unreasonable.

We conclude that plaintiffs' remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

33                                                        A-2098-22